Robert E. Barnes, Cal. Bar# 235919
Barnes Law, LLP
700 S. Flower St., Suite 1000
Los Angeles, CA 90017
Tel: (310)510-6211
Fax: (310)510-6225
robertbarnes@barneslawllp.com
Attorney for Petitioner, Julie Dotton



UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

JULIE DOTTON,                          )
                                       )      Case No.
            Petitioner,                )
                                       )
vs.                                    )
                                       )
                                       )
                                       )
UNITED STATES OF AMERICA,              )      **AMENDED PETITION TO**
                                       )      **QUASH IRS SUMMONSES**
            Respondent.                )
                                       )
                                       )
                                       )
_____)


COMES NOW THE PETITIONER, Julie Dotton, by and through her

counsel of record, Robert Barnes (pro hac vice pending), and respectfully petitions

this Court to quash certain Internal Revenue Service summonses issued by the

Department of the Treasury Internal Revenue Service.  The summonses seek

records from three Third-Party Record-keepers regarding internal revenue matters

allegedly involving the Petitioner.  The original petition in this matter was mailed

to the court on April 19, 2021 and recived pursuant to U.S. Mail records on April

20, 2021.

## JURISDICTION AND VENUE

The instant Petition is filed pursuant to 26 U.S.C. § 7609(b)(2), and this

Court has subject matter jurisdiction over this proceeding under 26 U.S.C. §

7609(h).  Venue is proper in this district because records are located within this

district as are both Petitioner and Respondent.

## PARTIES

1.      The Petitioner, Julie Dotton, resides at 7 Pawtucket Road, Orchard

Park, NY 14127.

2.      The Respondent, United States of America, and its agent, the

Department of the Treasury Internal Revenue Service ("IRS"), has its offices at

130 South Elmwood Avenue, Suite 233, Buffalo, NY, 14202.

## FACTUAL BACKGROUND

3.      On March 31, 2021, the Internal Revenue Service ("IRS") issued two

Summonses, a true and correct copies of which are attached as "Exhibit A" and

"Exhibit B" filed in support of this Petition, directing M&T Bank, ATTN: Legal

Department, Document Processing, located at 1100 Wehrle Dr., Williamsville, NY

14221 and Evans Bank located at 6460 Main Street, Williamsville, NY 14221 to appear and produce a multiplicity of records and documents allegedly relating to the Petitioner Dotton.

4.     On April 8, 2021, the Internal Revenue Serice ("IRS") issued five additional summonses true and correct copies of which are attached as Exhibits C-G filed in support of this Petition directing Citizens Bank, located at 1 Citizens Drive, ROP 210, Riverside, RI 02915 (Ex. C); CNB Bank, located at 1 South Second Street, Clearfield, PA 16830 (Ex. D); Community Bank, N.A., Attn : Subpoena & Levies Processing, located at One Tallman Road, Canton, NY 13617 (Ex. E); Northwest Savings Bank, 100 Liberty Street, Warren , PA 16365 (Ex. F); and Woodforest National Bank, ATTN: The Legal Dept., located at 25231 Grogans Mill Road, Suite 100, The Woodlands, TX 77380 (Ex. G) to appear and produce a multiplicity of records and documents allegedly relating to Petitioner Dotton.

5.     M&T, Evans Bank, Citizens Bank, CNB Bank, Community Bank, N.A., Northwest Savings Bank and Woodforest National Bank are Third-Party Recordkeepers under 26 U.S.C. § 7603(b)(2).

## ALLEGATIONS

6.     Significant evidence reasonably infers that a prosecution referral to the U.S. Department of Justice Tax Division is in effect related to the information

sought, or, at a minimum, that the IRS is institutionally committed to making such a referral for prosecution, if not already in effect. Indeed, it appears the IRS ignored its own internal rules, and prior court precedents, by engaging in a criminal investigation under the guise of a civil audit to mislead the petitioner into forgoing certain rights and opportunities in the audit process, and continue to do so by seeking an administrative summons for a case where the Service has long been secretly committed to pursuing criminally.

7.     Special Agent Kennneth Pantera knowingly violated the confidentiality requirements of Section 6103 of Title 26 of the Internal Revenue Code by illicitly disclosing the petitioner was under criminal investigation to, at a minimum, seven banks and likely more. The same special agent ignored the rules governing his conduct at multiple stages of this investigation, including attempting to induce the petitioner to make incriminatory statements against his interest without presence of counsel and without prior warnings, as rules and caselaw require.

8.     Additionally, the IRS routinely fails to follow the required administrative steps in a criminal inquiry that predicated the Court's decision in *LaSalle*, requiring a good faith modification of the extension of *LaSalle* to the unusual administrative powers afforded criminal inquiries by the IRS. Principally, these ignored administrative prerequisites include routinely using civil summonses

to aid and support a grand jury inquiry, opening a grand jury inquiry without any recommended referral for prosecution in many instances, engaging in eggshell audits with "fraud technical advisors" that are criminal investigations masked as civil audits (as occurred here), and denying citizens under inquiry and investigation basic *Miranda* notices (as occurred here), often violating their privacy rights by disclosing to third parties that someone is under criminal investigation (as occurred here), or denying their administrative conference rights. These are the protocols the IRS assured the Supreme Court they would follow, and were the primary predicates for the Supreme Court's unique and exceptional permission slip to the IRS for allowing administrative summonses to short-circuit the grand jury process.

It was IRS adherence to these protocols that predicated generous use of summonses by criminal investigators while, at the same time, prevented any potential misuse of civil summonses through pursuit of evidence of criminal wrongdoing outside the grand jury process and the rules of criminal procedure. These protocols are infirm and easily evaded under current tax policy administration.

## MEMORANDUM OF LAW IN SUPPORT OF PETITION TO QUASH

The Fourth, Fifth and Sixth Amendments safeguard the rights of the criminally accused from the encroachment of the state. When an agency calls upon the power of the judiciary to coerce disclosures under pain of contempt and

5

circumvent the search warrant protocols and grand jury protections of individuals, the court carefully guards its power of compulsory process against any and all potential misuse or possible abuse. Put simply, "a court may not permit its process to be abused." *See United States v. Powell*, 379 U.S. 48, 58 (1964).

"Congress has provided protection from arbitrary or capricious action by placing the federal courts between the Government and the person summoned." *United States v. Bisceglia*, 420 U.S. 141, 151 (1974). This inter-positional duty and intermediary role requires a court not lend its judicial imprimatur to any administrative summons without a finding of good faith in the agency's conduct and no potential for abuse of the court's process. *See id.* at 146 ("[A]n Internal Revenue Service summons can be enforced only by the courts."). As the Court instructed in *Powell*: "Such an abuse [of process] would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or put pressure on him to settle a collateral dispute, *or for any purpose reflecting on the good faith of the particular investigation*." *Powell*, 379 U.S. at 58 (emphasis added).

In order to grant enforcement of such a summons, the court must minimally find from all facts "that the summons (1) was issued pursuant to a 'legitimate purpose'; (2) seeks information 'relevant' to that purpose; (3) seeks information that is 'not already within the Commissioner's possession'; and (4) satisfies all

'administrative steps required by the Code.'" *See Stewart v. United States*, 511 F.3d 1251, 1254 (9th Cir. 2008) (quoting *Powell*, 379 U.S. at 57-58)).

A legitimate purpose is information sought and relevant to civil tax purposes. *See United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997). Information is relevant if it may be probative of the *civil* tax purpose. *See id*. The definition of IRS "possession" of records includes any records the Service can easily access. *See United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973) ("The obligation is upon the Commissioner to demonstrate that the material requested is not within his possession or, that if it is technically within his possession, he has no practical way of obtaining the desired item.")

Additionally, "the taxpayer may challenge the summons on any appropriate grounds" including any other abuse of the court's process. *United States v. Riewe*, 676 F.2d 418, 420 (10th Cir. 1982) (citing *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)); *see also United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997) (en banc).

This is a twin requirement: first, whether the Service is acting in good faith in seeking the information from the summons for a civil purpose without harassment, focusing on the motives of the institution and the individual agent; and second, measuring whether the summons could have the effect of an abuse of process.

7

To demonstrate good faith, the Service must show it seeks this information to serve their "interest in civil as opposed criminal, remedies." *United States v. Cortese*, 614 F.2d 914, 917 (3rd Cir. 1980). Equally, the Service cannot ask the aid of the court to coerce compulsory process if the agent demonstrates animus or harassment. *Id.* at 921.

"Enforcement should be denied, however, if it is issued for an improper purpose such as solely in furtherance of a criminal investigation." *United States v. Zack*, 521 F.2d 1366, 1367 (9th Cir. 1975) (citing *Resman v. Caplin*, 375 U.S. 440, 449 (1964)). Where "the sole objective of the investigation is to obtain evidence for use in a criminal prosecution" then "the purpose of the summons [will] be said to violate the Fourth Amendment and enforcement [of the summons] be denied." *United States v. Theodore*, 479 F.2d 749, 753 (4th Cir. 1973); *see also United States v. Lewis*, 604 F.Supp. 1169 (E.D.La. 1985).

As for preventing the effect of enforcement from abusing the court's process, the court must consider the prophylactic effect on investigative conduct by the agency, public confidence in a court's issuance of process under pain of contempt, and the privacy concerns of the individual.

"In terms of protection to the individual, a summons submitted to a court for enforcement is at least equivalent to a search warrant." *United States v. Roundtree*, 420 F.2d 845, 851 (5th Cir. 1970). The district court must "limit the invasion of

privacy through the judicial scrutiny to which a summons is subject for its enforcement and through the standards enumerated in *Powell* of legitimate purpose, proper procedure, relevance, and refusal to allow abuse of the courts' process." *Id.* It "would be a misuse of the tax summons for the IRS to endeavor to use it to obtain evidence for use in an existing criminal prosecution." *Id.*

The petitioner may stand in the shoes of those not before the court. *See United States v. Equitable Trust Company*, 611 F.2d 492 (4th Cir. 1979) (petitioner "may bring the abuse-of-court-process contention to the District Court's attention and ask the District Court not to ignore the same, even if the abuse complained of involves no violation of any right" of his); *see also United States v. Hamilton Federal Sav. and Loan Ass'n*, 566 F.Supp. 755 (E.D.N.Y.1983).

Discovery is necessary whenever the petitioner must rely on information peculiarly within the knowledge or files of the government. *See United States v. Security Bank & Trust Co.*, 661 F.2d 847, 850 (10th Cir. 1981). Wherever there is an allegation of agent animus or agent harassment then "discovery should be provided." *United States v. Cortese*, 614 F.2d 914, 921 n.12 (3rd Cir. 1980). The same applies to a sufficient allegation of a pending criminal investigation. *See United States v. Genser*, 595 F.2d 146, 152 (3rd Cir. 1979).

The Supreme Court, in fact, presumes the right to discovery prior to any adjudication in summons litigation, notwithstanding the Government's showing on

9

the paper. *Powell*, 379 U.S. at 59. *Powell's* context suggests that after an adequate

showing. In *Powell*, the Supreme Court stated: "[t]his [adequate showing by the

Government] does not make meaningless *the adversary hearing to which the*

*taxpayer is entitled* before enforcement is ordered." *Id.* (emphasis added). Here,

discovery is needed, an evidentiary hearing compelled, and the Summons

rightfully quashed for the reasons set out below.

I.   **The Purpose of the Summons is Solely For Criminal Investigatory
     Purposes in Coordination with an On-Going Grand Jury, or There is an
     Institutional Commitment to Refer This Matter to the Department of
     Justice.**

The Supreme Court first warned in *Reisman v. Caplin*, 375 U.S. 440, 448

(1964):

> Furthermore, we hold that in any of these procedures before either the
> district judge or United States Commissioner, the witness may
> challenge the summons on any appropriate ground. This would
> include, as the circuits have held, the defenses that the material is
> sought for the improper purpose of obtaining evidence for use in a
> criminal prosecution.

If there is already a referral or grand jury concerning the same entity at issue, then

this precludes summons enforcement. *Michaud*, 907 F.2d at 755. "No summons

may be issued . . . with respect to any person if a Justice Department referral is in

effect with respect to such person." 26 U.S.C. § 7602(d)(1). That complete bar is

not an open door to misuse civil summonses by delaying criminal referrals.

The High Court returned to the same warning a decade later:

> We shall not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution. Such a delay would be tantamount to the use of the summons authority after the recommendation and would permit the Government to expand its criminal discovery rights. Similarly, the good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases.

*United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316-17 (1978).

And once again another decade later:

> [T]he IRS may not issue a summons once it has recommended prosecution to the Justice Department, nor may it circumvent this requirement by delaying such a recommendation in order to gather additional information. When Congress codified the essence of our holding in sec. 7602(c) it apparently shared our concern about permitting the IRS to encroach upon the rights of potential criminal defendants. The Report of the Senate Finance Committee noted that "the provision is in no way intended to broaden the Justice Department's right of criminal discovery or to infringe on the role of the grand jury as a principal tool of criminal prosecution.

*United States v. Stuart*, 489 U.S. 353, 362-63 (1989).

Put simply, "enforcement can and should be denied when the Service is attempting to exploit its civil investigatory powers as a de facto grand jury." *Michaud*, 907 F.2d at 752.

The IRS has likely made a criminal referral regarding Petitioiner Dotton to the United States Department of Justice. "[T]he question whether an investigation has solely criminal purposes must be answered only by an examination of the

*United States*, 816 F.2d 139, 144 (4th Cir. 1987).  Violations of basic standards of

investigatory conduct can equal such bad faith.  *See Conner v. United States*, 434

F.3d 676, 683 (4th Cir. 2006) ("violations of the Internal Revenue Manual are

relevant to the bad faith inquiry in this case").

Civil summonses for criminal purposes elude key protections of the grand

jury process, including prosecutorial control, judicial oversight, grand juror

independence, the secrecy protections of Rule 6(e), and the anonymity of grand

jury subpoenas not listing the subject of their inquiry.  It was with this in mind that

Congress placed strict limits on IRS agents disclosing that someone is under

criminal investigation, with no exception provided in the statute for disclosure on

civil summonses.  *See* 26 U.S.C. § 6103.

An agent may only make such a disclosure provided three requirements are

met:

> (1) the information sought is "with respect to the correct
> determination of tax, liability for tax, or the amount to be collected or
> with respect to the enforcement of any other provision of the [Internal
> Revenue Code]."  (2) the information sought is "not otherwise
> reasonably available";  and (3) it is "necessary to make disclosures of
> return information in order to obtain the additional information
> sought."

*Payne v. United States*, 289 F.3d 377, 382 (5th Cir. 2002) (explaining 26 U.S.C. §

6103(k)(6)) (quoting *DiAndre v. United States*, 968 F.2d 1049, 1052 (10th Cir.

1992)).

An agent who discloses the subject matter of the investigation, the target of the investigation and its criminal character on "administrative summonses and letters to third-parties" right "on their face that Payne was under criminal investigation" patently violated the law and such conduct was in evident bad faith. *Payne*, 289 F.3d at 384. "An agent violates the statute, as well as the Internal Revenue Manual, when he or she identifies the subject of his or her investigation." *Snider v. United States*, 468 F.3d 500, 507 (8th Cir. 2006).  Such conduct is manifest bad faith:

> As mentioned above, the plain language of the statute prohibits the disclosure of both a taxpayer's identity and whether the taxpayer's return was, is being, or will be examined or subject to other investigation, as both forms of information constitute "return information."  Therefore, it cannot be said that a reasonable officer would have failed to understand that such a disclosure would violate a clearly established right of the taxpayer.

*Id.* at 508.

The agent here made no meaningful effort to acquire this information from Dotton prior to issuing summonses, nor other potential sources for such information.  "Examination of agent motive may be necessary to evaluate the good-faith factors of Powell, for example, to consider whether a summons was issued to harass." *LaSalle*, 437 U.S. at 316, n.17. This conduct alone necessitates quashal.

**III.    The IRS Failure to Comply with Statutory Requirements.**

The IRS failed to comply with the statutory requirements for issuing a third-party "civil" summons. *See* 26 U.S.C. § 7609(a)(1)-(2) and 26 U.S.C. § 7603. The Internal Revenue Code requires that all persons summonsed be served with an attested copy of the Summons. *See id.* The only copy available to Dotton demonstrates an unattested summons. *See* Ex. A and B. "[The] valid purpose for this mandate is to assure the person receiving the summons that what he received was in fact a true copy of the original summons." *See Henderson v. United States*, 778 F.Supp. 274, 277 (D.S.C. 1991).[1]

## IV.    As the IRS No Longer Follows The Referral Process Before Using Grand Juries, Criminal Investigators Should Not Be Allowed the Additional Benefit of Civil Summonses.

"Future cases may well reveal the need to prevent other forms of agency abuse of congressional authority and judicial process." *LaSalle*, 437 U.S. at 318 n. 20. This is such a case.

The Supreme Court, from its inception, interpreted these set of statutes restrictively to avoid "constitutional consideration" that would otherwise arise. *Reisman*, 375 U.S. at 448, n.8. The Court's Constitutional conforming constructions of the past saved the statute from Constitutional challenge. *See Michaud*, 907 F.2d at 755, n.1 (Coffey, concurring) (necessary to limiting

---

[1] Some courts have determined that attestation is not in and of itself a grounds to quash the summons. *See Kernan*, 2007 WL 1288155 at *2 (relying on *Cook*, 104 F.3d at 889).

interpretation to summons statute preserve constitutionality of statute).  Now, the

problem is here.  The Court's fear was the "likelihood that discovery would be

broadened or the role of the grand jury infringed" by criminal investigative use of

civil summonses.  *LaSalle*, 437 U.S. at 312.

> Nothing in 7602 or its legislative history suggests that Congress
> intended the summons authority to broaden the Justice Department's
> right of criminal litigation discovery or to infringe on the role of the
> grand jury as a principal tool of criminal accusation . . . .

*Id.*

"Only after the officials of at least two layers of review have concurred in the

conclusion of the special agent does the referral to the Department of Justice take

place."  *Id.* at 315.  The Court further relied upon the protections of the innocent

taxpayer from publicly humiliating disclosure or criminal inquiry, again accepting

the assurances of the IRS they would follow protocol.

> It should also be noted that the layers of review provide the taxpayer
> with substantial protection against the hasty or overzealous judgment
> of the special agent.  The taxpayer may obtain a conference with the
> district Intelligence Division officials upon request or whenever the
> chief of the Division determines that a conference would be in the best
> interests of the Government.  If prosecution has been recommended,
> the chief notifies the taxpayer of the referral to the Regional Counsel.

*Id.* at 315-16.

These extensive administrative rules and regulations governing the criminal

referral process are no longer effectively meaningful.  In fact, the Service now

routinely discards these internal rules, convening grand juries without any referral

16

in place, and the taxpayer protections are as useful as a house without a foundation or a moat without a bridge or the sworn promise of a candidate for office. With the rationale gone, and the taxpayer protections gone with it, the Service should not be allowed to augment and supplement their criminal investigative tools with this court's compulsory process. The Court limited its "prophylactic restraint" to formal referrals, with other cases decided individually. The goal of not mixing grand juries with civil summonses by awaiting the referral process depended upon the government's assertions that the agent could not invoke grand jury process without the difficult and full referral process through the hierarchy of the Internal Revenue Service and the Department of Justice. *See LaSalle*, 437 U.S. at 313-16.

> As a sister district court held half a century ago in forewarning:

> The Constitution of the United States, the statutes, the traditions of our law, the deep-rooted preferences of our people speak clearly. They recognize the primary and nearly exclusive role of the Grand Jury as the agency of compulsory disclosure. That is the inquisitorial body provided by our fundamental law to subpoena documents required in advance of a criminal trial, and in the preparation of an indictment or its particularization. To encourage the use of administrative subpoenas as a device for compulsory disclosure of testimony to be used in presentments of criminal cases would diminish one of the fundamental guarantees of liberty. Moreover, it would sanction perversion of a statutory power. The power under § 3614 was granted for one purpose, and is now sought to be used in a direction entirely uncontemplated by the lawgivers. The limitations implicit in every grant of power are that it will be used not colorably, but conscientiously for the realization of those specific ends contemplated by the donors of the power.

*United States v. O'Connor*, 118 F.Supp. 248, 250-51 (D. Mass. 1953).

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Dotton respectfully requests: (1) an order from this Court QUASHING the controversial IRS Summonses that exist with regard to the Third-Party Recordkeepers named above; or alternatively (2) ordering an evidentiary hearing in this matter to determine whether the summonses were issued in good faith.

DATED: April 25, 2021          Respectfully submitted,


                                        /s/ Robert E. Barnes
                                        Robert E. Barnes

                                        Attorney for Petitioner
                                        Julie Dotton

18

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JULIE DOTTON, | ) | |
| | ) | Case No. |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

IT IS HEREBY CERTIFIED THAT:

I, ROBERT E. BARNES, am a citizen of the United States and am at least 18 years of age. My business address is 700 South Flower Street, Suite 1000, Los Angeles, California 90017.

I am not a party to the above titled action, my appeance is processing. I have caused service of this memorandum in support by electronically filing the foregoing through U.S. Mail Express to the following:

-   Special Agent Kenneth R. Pantera Jr., 130 South Elmwood Avenue, Suite 233, Buffalo, NY 14202;

19

- M&T Bank. Attn: Legal Department. Document Processing, 1100 Wehrle Drive. Williamsville, NY 14221;

- Evans Bank, 6460 Main Street, Williamsville, NY 14221

- Citizens Bank, 1 Citizens Drive, ROP 210, Riverside, RI 02915

- CNB Bank, 1 South Second Street, Clearfield, PA 16830

- Community Bank, N.A., Attn : Subpoena & Levies Processing, One Tallman Road, Canton, NY 13617

- Northwest Savings Bank, 100 Liberty Street, Warren , PA 16365

- Woodforest National Bank, ATTN: The Legal Dept., 25231 Grogans Mill Road, Suite 100, The Woodlands, TX 77380

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 25, 2021.

/s/ Robert E. Barnes
Robert E. Barnes

Attorney for Petitioner
Julie Dotton